IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Miriam Lynn Ricker, | ) | C/A No. 0:15-312-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Miriam Lynn Ricker, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disabled Widow's Benefits ("DWB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and that the case should be remanded to the Commissioner for further administrative action.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months."[1]  20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973); 20 C.F.R. § 404.335 (stating that disability for DWB is as defined in § 404.1505).  The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d

---

[1] There are additional requirements for qualifying for DWB as opposed to DIB; however, none of those requirements are in dispute in the current matter.  See 20 C.F.R. § 404.335.

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In April 2013, Ricker applied for DWB and SSI, alleging disability beginning February 27, 2011. Ricker's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on July 1, 2014 at which Ricker, who was represented by Christina Carrano, a non-attorney representative, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 28, 2014 concluding that Ricker was not disabled. (Tr. 21-32.)

Ricker was born in 1958 and was fifty-three years old at the time of her alleged disability onset date. (Tr. 301.) She has a high school education and past relevant work experience as a bookkeeper, a cashier, a manager at a storage facility, and a screen printer. (Tr. 306.) Ricker alleged disability due to seizures, congestive heart failure, a herniated disk, thyroid disease, an aneurism, and depression. (Tr. 305.)

The ALJ found that Ricker was the "unmarried widow" of the deceased insured worker, had attained the age of fifty, and met the non-disability requirements for DWB set forth in section 202(e) of the Social Security Act. The ALJ also noted that the prescribed period would end on January 31, 2018. In applying the five-step sequential process, the ALJ found that Ricker had not engaged in substantial gainful activity since February 27, 2011—her alleged onset date. The ALJ also determined that Ricker's degenerative disc disease, chronic obstructive pulmonary disease/bronchitis with tobacco abuse, and arthritis were severe impairments. However, the ALJ found that Ricker did

not have an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The

ALJ further found that Ricker retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she
> can never climb ladders/ropes/scaffolds and only occasionally climb ramps/stairs.
> She frequently stoop.  [*sic*]  Additionally, she can occasionally crouch, kneel, and
> crawl.  The claimant can frequently finger and perform fine manipulation but must
> avoid concentrated exposure to extreme cold, heat, and humidity.  She must avoid
> even moderate exposure to fumes, odors, dusts, and gases and all exposure to moving
> machinery/unprotected heights.

(Tr. 27.)  The ALJ found that Ricker was capable of performing past relevant work as a bookkeeper

and that this work did not require the performance of work-related activities precluded by Ricker's

residual functional capacity.  Therefore, the ALJ found that Ricker was not disabled from February

27, 2011 through the date of his decision.

The Appeals Council denied Ricker's request for review on November 25, 2014, making the

decision of the ALJ the final action of the Commissioner.  (Tr. 1-5.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.

However, this review is limited to considering whether the Commissioner's findings "are supported

by substantial evidence and were reached through application of the correct legal standard."  Craig

v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829

F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's

decision is supported by substantial evidence and whether the correct law was applied.  See Myers

v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d

at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Ricker raises the following issues for this judicial review:

Point I:        The ALJ Failed to Properly Weigh the Medical Evidence[.]

Point II:       The ALJ Failed to Properly Evaluate Ms. Ricker's Credibility[.]

(Pl.'s Br., ECF No. 9.)

## DISCUSSION

Ricker first argues that the ALJ erred in evaluating opinion evidence from Dr. Gunther Rencken, Ricker's treating physician.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should also be considered.  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to



such an opinion. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Id.</u> (quoting <u>Craig</u>, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." <u>Id.</u>

On October 27, 2013, Dr. Rencken completed a multiple impairment questionnaire, indicating that he treats Ricker every two to three months and her diagnoses include degenerative disc disease, back pain, arthritis, hypothyroidism, seizure disorder, depression, and tobacco abuse. Dr. Rencken stated that Ricker's prognosis was fair. (Tr. 592.) Dr. Rencken indicated that support for his findings included chronic pain (especially in the lower back and hands), shortness of breath with exertion, and MRI results showing degenerative disc disease. (Tr. 592-93.) Dr. Rencken stated that Ricker's primary complaints included pain and fatigue and indicated that Ricker's symptoms and limitations were reasonably consistent with Ricker's impairments described in the evaluation. (Tr. 593.) On a one-to-ten scale, Dr. Rencken estimated that Ricker's level of pain and fatigue were

both a seven, which was listed as moderately severe. Dr. Rencken indicated that he had not been able to completely relieve Ricker's pain with medication without unacceptable side effects.

In assessing Ricker's functional capacity, Dr. Rencken estimated that in a normal competitive eight-hour per day, five-day per week work environment, Ricker would be able to sit three hours and stand/walk three hours, that she would need to get up and move around hourly for ten to fifteen minutes before she could sit again, and that it would be necessary or recommended for Ricker not to stand/walk continuously in a work setting. (Tr. 594-95.) Dr. Rencken indicated that Ricker could occasionally lift or carry up to ten pounds and never lift or carry anything greater than ten pounds, and that Ricker's arthritic joints made repetitive reaching, handling, fingering, or lifting painful. Dr. Rencken reported that Ricker was moderately limited, which was defined as significantly limited but not precluded, with both arms in her ability to grasp, turn, and twist objects, perform fine manipulations, and reach. (Tr. 595-96.) Dr. Rencken stated that he had not attempted treatment, other than the listed medications, because Ricker could not afford further treatment. Dr. Rencken indicated that Ricker's pain, fatigue, or other symptoms were constantly severe enough to interfere with attention and concentration. He also stated that depression would affect Ricker and checked that Ricker was not a malingerer. (Tr. 597.) Dr. Rencken indicated that Ricker was capable of low stress work, that she would have good days and bad days, and that, on average, she would be absent from work more than three times a month. (Tr. 597-98.) Finally, Dr. Rencken checked boxes indicating that Ricker had the following additional limitations: need to avoid heights and no pushing, pulling, kneeling, bending, or stooping. (Tr. 598.)

The ALJ also construed a statement in a November 2013 treatment note from Dr. Rencken as an opinion. Specifically, Dr. Rencken stated, Ricker "is again working on getting disability and

I think this is probably reasonable for her.  She really does have a difficult time with her multiple illnesses."  (Tr. 610.)

> The ALJ stated the following in evaluating these opinions:
>
> Dr. Rencken is the claimant's primary care physician and is not an orthopedic specialist, pulmonologist, or rheumatologist.  His treatment diagnoses, including his diagnosis of arthritis based on the claimant's self-report of hand pain in October 2013, do not appear to be based on sound clinical findings and laboratory testing.  In fact, there is no laboratory testing documenting a positive rheumatoid factor that would establish a positive diagnosis of arthritis.  When viewed in conjunction with the claimant's conservative treatment, his opinion statements are not credible.  As such, they are accorded little weight.

(Tr. 29.)

Upon review of the record and the parties' briefs, in light of the ALJ's cursory explanation of his reasons for giving Dr. Rencken's opinions little weight, the court is unable to determine whether the ALJ's decision is supported by substantial evidence.  Specifically, as argued by Ricker and contrary to the ALJ's statement that Dr. Rencken's "treatment diagnoses do not appear to be based on sound clinical findings and laboratory testing," the treatment records reveal that Dr. Rencken found upon examination of Ricker, "arthritic changes of both her hands, especially the MCP joints and the proximal knuckles."  (Tr. 585.)  Thus, the only specific reason offered by the ALJ appears to be inaccurate.[3]  Moreover, the court cannot say the ALJ's failure to acknowledge the clinical findings by the treating physician upon examination of Ricker is harmless in light of the stark conflict between Dr. Rencken's limitations regarding Ricker's hands and the ALJ's specific finding that Ricker could frequently finger and perform fine manipulation.

---

[3] Additionally, with regard to the level of treatment for Ricker's arthritis, Ricker indicated that she was unable to take naproxen due to her blood pressure medications.  (Tr. 418.)



Upon review of the ALJ's decision and the record, the court is unable to determine whether the ALJ's decision to give little weight to the treating physician's opinions based on medical unsupportability is supported by substantial evidence in light of the apparent erroneous statement. See 20 C.F.R. §§ 404.1527(c), 416.927(c); cf. Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). Where, as here, the record appears to contain conflicting medical evidence, it is the purview of the ALJ to first consider and weigh the evidence, and resolve the conflict.[4] See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Therefore, the court is constrained to recommend that this matter be remanded for further consideration of Dr. Rencken's opinions.

In light of the court's recommendation that this matter be remanded for further consideration, the court need not address Ricker's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Ricker may present her remaining arguments concerning the ALJ's alleged errors on remand.

---

[4] Thus, the court expresses no opinion as to whether further consideration of Dr. Rencken's opinions by the ALJ should necessarily lead to a finding that Dr. Rencken's opinions are entitled to controlling weight or that Ricker is ultimately entitled to benefits. Further analysis and discussion may well not change the ALJ's conclusion on this point.



**RECOMMENDATION**

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

April 12, 2016                                    Paige J. Gossett
Columbia, South Carolina                          UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).